SUMMONS — SC-85-1 2nd Original Service Copy

PRL-01363

SUMMONS                    SC-85-1                    Clyde Castleberry Co., Covington, GA, 30015

IN THE ~~SUPERIOR~~/STATE COURT OF ___SPALDING___ COUNTY

STATE OF GEORGIA

DEBORAH MANLEY INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE OF MINDY
ANN MANLEY, BRIAN MANLEY, A MINOR B?N?F
b/n/f  DEBORAH MANLEY, AND CHANDLER MANLEY
A MINOR, b/n/f KENNY DOBSON

CIVIL ACTION NUMBER  13SV-249

PLAINTIFF

VS.

~~FORD MOTOR COMPOANY, COOPER TIRE~~
AND RUBBER COMPANY, AND RSP CORPORATION
~~d/b/a NATIONAL BRAKE AND MUFFLER~~

DEFENDANT



## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:   LARRY KEITH EVANS
            113 WEST TAYLOR ST.
            GRIFFIN, GA 30223
            PH: 770-228-5530
            E_MAIL: lkevans@bellsouth.net

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 20th day of September, 20 13.

Clerk of ~~Superior~~/State Court

BY Marcia L. Norris
                                                            ~~Deputy~~ Clerk

**EXHIBIT A**

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

IN THE STATE COURT OF SPALDING COUNTY
STATE OF GEORGIA

DEBORAH MANLEY, Individually
and as Administratrix of
the Estate of MINDY ANN MANLEY,
BRIAN MANLEY, A Minor b/n/f
Deborah Manley, and CHANDLER
DOBSON-MANLEY, A Minor b/n/f
Kenny Dobson,

        Plaintiffs

v.

FORD MOTOR COMPANY, a foreign
corporation; COOPER TIRE AND
RUBBER COMPANY, a foreign
corporation; and RSP Corporation,
d/b/a NATIONAL BRAKE AND
MUFFLER, a Georgia corporation,

        Defendants.

Civil Action No.: 13SV-249



## PLAINTIFFS' ORIGINAL COMPLAINT

Come now the Plaintiffs, Deborah Manley, Individually and as Administratrix of the Estate Of Mindy Ann Manley, Brian Manley, A Minor, by his next friend, Deborah Manley, and Chandler Dobson Manley, A Minor, by his next friend, Kenny Dobson, and file this their Original Complaint, and in support thereof would show unto the Court as follows:

### PARTIES

1.

DEBORAH MANLEY is a citizen of Georgia and a resident of Zebulon, Pike County, Georgia, and is the duly appointed Administratrix of the Estate of her

deceased natural daughter, MINDY MANLEY, who was a citizen of Georgia and resident of Griffin, Spalding County, Georgia.

2.

DEBORAH MANLEY is the legal guardian and next friend of BRIAN MANLEY,

3.

KENNY DOBSON is the natural parent and next friend of CHANDLER DOBSON-MANLEY, and is a citizen of Georgia and a resident of Griffin, Spalding County, Georgia

4.

FORD MOTOR COMPANY (hereinafter "FORD"), is a Delaware corporation with its principal place of business in Dearborn Michigan. FORD is authorized to conduct business in Georgia; conducts business in Georgia; and derives substantial economic profits from Georgia. FORD is subject to personal jurisdiction in this state. **Ford's authorized agent for the service of process is The Corporation Company, and may be served with process at 328 Alexander St, Suite 10, Marietta, Ga., 30060.** This Defendant was properly served.

5.

COOPER TIRE AND RUBBER COMPANY, (hereinafter "COOPER TIRE"), is a Delaware corporation with its principal place of business in Findlay, Ohio. COOPER TIRE is authorized to conduct business in Georgia; conducts business in Georgia; and derives substantial economic profits from Georgia. Cooper Tire is subject to personal jurisdiction in this state. **Cooper Tire's authorized agent for the service of process is Robert A. Clay and may be served with process at 3029 New York Road, Desoto, Ga., 31743.** This Defendant was properly served.

6.

RSP Corporation d/b/a NATIONAL BRAKE AND MUFFLER, (hereinafter "NATIONAL BRAKE"), is a Georgia corporation with its primary office at 1412 Bowling Lane, Griffin, Georgia, 30223. **The registered agent for service of National Brake and Muffler is Raakesh Patel, 1412 Bowling Ln., Griffin Georgia, 30223.** This Defendant was properly served.

## JURISDICTION AND VENUE

7.

This civil action is brought under theories of strict liability, negligence, negligent failure to warn and breach of implied warranty.

8.

The Court has jurisdiction over the subject matter of this action because the defective vehicle was purchased in the State of Georgia, the service of the vehicle which is at issue occurred in the State of Georgia, the accident at issue occurred in state of Georgia, and the defendants are residents of, or regularly and continuously conduct business in, the State of Georgia.

9.

The Court has personal jurisdiction over FORD, COOPER TIRE, and NATIONAL based on their numerous contacts with the state and the presence of its authorized dealers in all parts of the State Of Georgia, including but not limited to this county where the matter is now pending.

10.

Venue is proper in Spalding County based on the residence of Defendant NATIONAL BRAKE, a Georgia Corporation, joint tortfeasor and resident of Spalding County Georgia.

## FACTUAL BACKGROUND

11.

The defective vehicle which forms the basis for this suit is a 2001 Ford Explorer (1FMYU60E41UC26781) designed, tested, manufactured, assembled, and/or distributed by FORD.

12.

On September 3, 2012, Mindy Manley, Deborah Manley, Brian Manley and Chandler Dobson-Manley were returning from a trip to Florida, and were northbound on Interstate 75 in Lowndes County, Georgia when the Cooper Tire Mastercraft Courser HTR tire on the right rear of the Explorer failed suddenly and without warning.

13.

Following the failure of the right rear tire, Mindy Manley was unable to control the Explorer, and the vehicle rolled over.

14.

In spite of the fact that she was properly wearing the drivers safety belt, Deborah Manley died of the injuries that she sustained in the rollover.

15.

At the time of the crash, Deborah Manley, Brian Manley and Chandler Dobson-Manley were passengers in the vehicle, were each properly restrained, and each sustained physical injuries in the rollover.

16.

Prior to the failure of the right rear tire and the rollover of the vehicle, on March 1, 2011, National Brake performed service on the Explorer, and as part of that service specifically conducted a safety inspection of the tires on the vehicle and noted them to be "OK", and did not recommend that any of the tires be removed from service.

## COUNT 1
## STRICT LIABILITY – FORD

17.

The Ford Explorer is defective and unreasonably dangerous by design when used as marketed by FORD. The inherent defects in the design were present at the time the vehicle was manufactured and distributed. The defects in the vehicle were a proximate and producing cause of the injuries, death and damages which are at issue in this case. At all times relevant to the Complaint, FORD was in the business of designing, manufacturing or otherwise distributing automobiles. The defective nature of the design of the Explorer, included defects in design; stability; handling; marketing; instructions; warning; crashworthiness; rollover resistance and controllability. The defective nature of the vehicle includes the following:

17.01   The Explorer is defective in that the design of the "package", which includes the combination of track width and vertical center of gravity height, creates an unreasonable risk of rollover given the uses for which the vehicle was marketed;

17.02   The Explorer is defective from a handling standpoint because it has an unreasonable tendency to get sideways in emergency situations and does not remain controllable under all operating conditions as required by FORD guidelines, including the tendency to oversteer and skate;

17.03   The Explorer is unreasonably dangerous from a stability standpoint because it rolls over instead of sliding when loss of directional control occurs on relatively flat level surfaces during foreseeable steering maneuvers;

17.04   The combination of 17.01-17.03 creates an extreme risk of rollover that is both beyond the reasonable expectations of consumers and creates a risk

that far outweighs any benefit associated with the design given the uses for which the vehicle was marketed;

17.05   The vehicle is unreasonably dangerous because it performs in an unsafe manner when operated in foreseeable emergency situations and maneuvers, which FORD had both actual and constructive knowledge would lead to rollover crashes. FORD's knowledge included both actual knowledge based on its test history with SUVs; it's research and knowledge of rollover in foreseeable turning maneuvers; and given its corporate history with respect to SUV designs;

17.06   The risk of operating the vehicle as designed outweighed any benefits associated with the design and FORD knew of these risks; knew that the risk, if it materialized, would lead to rollover crashes and severe injuries; and knew that rollover crashes were particularly dangerous;

17.07   FORD knew that this type vehicle – an SUV – was not reasonably safe for inexperienced and untrained drivers and knew that the vehicle was not sufficiently capable of maneuvering in emergency conditions that consumers would face on freeways at freeway speeds;

17.08   The Explorer was likewise unreasonably dangerous from a crash protection standpoint in that the vehicle was not equipped with an occupant protection system – roof, safety belt system, and glazing design – that would effectively provide reasonable protection in the event of a rollover. FORD knew that the belt system would not effectively and reasonably restrain occupants involved in freeway-speed rollovers and FORD knew of the risk that the roof was not sufficiently strong to provide a safety cage for the occupants. Despite knowledge of these risks, and the availability of alternative safer designs, FORD intentionally marketed the vehicle to consumers for use as a freeway, passenger-carrying vehicle, and intentionally led consumers to believe that it was safe, stable, and would provide state of the art protection to occupants.

17.09   FORD knew that the vehicle was not sufficiently equipped with restraints that were designed to perform safely, despite the fact that FORD marketed the vehicle as a family vehicle.

17.10   FORD had both actual and constructive knowledge of the existence of safer, alternative designs from both a stability and crash protection standpoint, and that the alternatives were technologically feasible and available;

17.11   FORD knowingly and intentionally placed the Explorer at issue into the stream of commerce with knowledge of the defects and conditions listed in paragraphs 17.04-17.10 above.

17.12   FORD willfully, wantonly, and consciously marketed the Explorer for the aforementioned uses with full knowledge of the risks inherent in the vehicle design, yet misled consumers and withheld critical information

about the unsafe nature of the vehicle in conscious disregard for the public.

17.13   Ford negligently, willfully and wantonly failed to warn regarding the above defects and unreasonably dangerous conditions.

The defective nature and failure to warn of those conditions was a proximate and producing cause of the accident, the injury and death of MINDY MANLEY and the injuries sustained by DEBORAH MANLEY, BRIAN MANLEY, and CHANDLER DOBSON-MANLEY, and other damages suffered by the each of these Plaintiffs. FORD is therefore liable for supplying a defective and unreasonably dangerous product and failing to warn regarding these unreasonably dangerous conditions that resulted in personal injury, death and property damage.

A safer alternative design was economically and technologically feasible at the time the product left the control of FORD, both with respect to rollover propensity and crash protection.

## COUNT 2
## NEGLIGENCE – FORD

18.

At all times relevant this Complaint, FORD was in the business of supplying motor vehicles for use on the public roadways. FORD held itself out to the public as having specialized knowledge in the industry, especially with respect to SUVs. As such, FORD owed consumers, including the Plaintiffs, a duty to use reasonable care in the design, manufacture, preparation, testing, instructing, and warnings surrounding the Explorer. FORD violated this duty by negligently supplying a vehicle that was defective. The negligent acts include but are not limited to the following acts or omissions:

18.01   Negligently designing the vehicle from a handling and stability standpoint given the manner in which it was marketed;

18.02   Negligently designing the vehicle with poor rollover resistance given the manner in which it was marketed;

18.03   Negligently designing and testing the vehicle from an occupant protection standpoint;

18.04   Negligently testing of the vehicle from a handling and stability standpoint;

18.05   Negligently designing and testing the vehicle from the standpoint of the ability of the vehicle to be controlled following the foreseeable failure of a tire;

18.06   Negligently failing to test the vehicle to ensure the design provides reasonable occupant protection in the event of a rollover;

18.07   Failing to adequately train and assist dealers in the dangers associated with the vehicle when used as marketed;

18.08   Failing to disclose known defects, dangers, and problems to both dealers and the public;

18.09   Negligently marketing the vehicle as a safe and stable passenger vehicle given the uses for which it was marketed;

18.01   Failure to meet or exceed internal corporate guidelines;

18.11   Negligently advertising the vehicle as safe and stable family vehicle;

18.12   Negligently failing to warn the consumer, including the Plaintiffs and the decedent, of the information FORD knew about rollover risk in SUVs, and specifically the Explorer, thus depriving the Plaintiffs of the right to make a conscious and free choice, and also in failing to disclose known problems in foreign countries in an effort to conceal problems that FORD knew about the Explorer from U.S. consumers, including the Plaintiffs;

18.13   Failing to comply with the state of the art in the automotive industry insofar as providing reasonable occupant protection in a rollover, including the use of roll sensing, pretensioners, side air bag and curtain technology, and integrated seating technology;

18.14   Failing to comply with applicable and necessary Federal Motor Vehicle Safety Standards with respect to occupant protection and/or failing to test appropriately to ensure compliance;

18.15   Failing to notify consumers, as required by law, that a defect exists in the vehicle that relates to public safety;

18.16   Failing to recall the vehicle or; alternatively, retrofitting the vehicle to enhance safety.

18.17   Negligently failing to warn regarding all of the above.

These acts of negligence were a proximate and producing cause of the accident, injuries, and damages suffered by the Plaintiffs. The dangers referenced earlier were reasonably foreseeable or scientifically discoverable at the time of exposure.

## COUNT 3
## BREACH OF WARRANTY – FORD

19.

At all times relevant to the complaint, FORD was a "merchant" in the business of supplying "goods" and/or "products" sold for consumer usage. As such, FORD breached the warranties of merchantability and fitness for a particular purpose in that the 2001 Explorer was not fit for ordinary use or for the intended use for which it was purchased. These breaches of warranty proximately resulted in the accident, injuries, death of Plaintiff parents and damages suffered by the Plaintiff. The product was unfit as previously described in Counts 1 and 2. Notice has been provided as required by law.

## COUNT 4
## STRICT LIABILITY – COOPER TIRE

20.

The Mastercraft Courser tire on the vehicle in question is defective and unreasonably dangerous by design when used as designed, tested, marketed and distributed by COOPER TIRE. The inherent defects in the design were present at the time the tire was manufactured and distributed. The defects in the tire were a proximate and producing cause of the injuries, death and damages which are at issue in this case. At all times relevant to the Complaint, COOPER TIRE was in the business of designing, manufacturing or otherwise distributing tires for use on automobiles, and specifically for use on SUVs. The defective nature of the design of the Mastercraft Courser, included defects in design; testing and manufacture of the

tire which affected its robustness and durability. The defective nature of the tire includes the fact that the tire in question was designed, tested, manufactured and distributed in such a manner that the structural integrity of the tire failed without warning while the vehicle was moving in foreseeable driving conditions and within the useful life of the tire.

21.

These defects were known, or should have been known, by COOPER TIRE defendants because the defendants knew of the importance of the robustness and structural integrity of tires, especially on tires made to be equipped on SUVs, and the defendants' unique knowledge of the dangers associated with early tire failures on SUVs at freeway speeds.

22.

The defective nature of the tire was a proximate and producing cause of the accident, the injury and death of MINDY MANLEY and the injuries sustained by DEBORAH MANLEY, BRIAN MANLEY and CHANDLER DOBSON-MANLEY, and damages suffered by the each of these Plaintiffs. COOPER TIRE is therefore strictly liable for supplying a defective and unreasonably dangerous product that resulted in personal injury, death and property damage.

### COUNT 5
### NEGLIGENCE – COOPER TIRE

23.

At all times relevant this Complaint, COOPER TIRE was in the business of supplying tires for use on motor vehicles for use on the public roadways, and specifically some tires which were specifically designed, tested, marketed and distributed for use on SUVs. COOPER TIRE held itself out to the public as having specialized knowledge in the industry, especially with respect to tires and specifically

tires for SUVs. As such, COOPER TIRE owed consumers, including the Plaintiffs, a duty to use reasonable care in the design, manufacture, preparation, testing, instructing, and warnings surrounding the Mastercraft Courser tire. COOPER TIRE violated this duty by negligently supplying a tire that was defective and unreasonably dangerous. The negligent acts include the following:

23.01   Negligently designing the tire;

23.02   Negligently manufacturing the tire;

23.03   Negligently testing the tire;

23.04   Negligently marketing the tire;

23.05   Negligently failing to warn;

23.06   Negligently failing to instruct;

23.07   Negligently failing to recall and/or remedy the defective tires in a timely manner;

23.08   Negligently failing to timely advise the consuming public of the hazards;

23.09   Negligently and intentionally concealing known defects;

23.10   Negligently and deceptively marketing the tires for profit;

23.11   Negligently failing to supervise the manufacture of the tires;

23.12   Negligently failing to control subsidiary companies;

23.13   Negligently participating in a joint venture to design and manufacture tires;

23.14   Negligently supervising the design of the tires.

These acts of negligence were a proximate and producing cause of the accident, injuries, and damages suffered by the Plaintiffs. The dangers referenced earlier were reasonably foreseeable or scientifically discoverable at the time of exposure.

## COUNT 6
## BREACH OF WARRANTY – COOPER TIRE

24.

At all times relevant to the complaint, COOPER TIRE was a "merchant" in the business of supplying "goods" and/or "products" sold for consumer usage. As such, COOPER TIRE breached the warranties of merchantability and fitness for a particular purpose in that the Mastercraft Courser was not fit for ordinary use or for the intended use for which it was purchased. These breaches of warranty proximately resulted in the accident, plaintiffs' injuries and other damages suffered by the Plaintiffs.

## COUNT 7
## NEGLIGENCE – NATIONAL

25.

On or around March 1, 2011, NATIONAL BRAKE performed a inspection of the subject vehicle, including specifically the tires, and indicated that the tire condition was "OK" and that the Explorer was in no need of maintenance or repair to the tires. This safety inspection of the tires was performed in its entirety at NATIONAL BRAKE'S facility in Griffin, Spalding County, Georgia.

26.

Upon returning the vehicle to the Manley's, no warning or instruction was given by NATIONAL BRAKE that the tires on the vehicle were not appropriate for that vehicle or that the tires themselves were not in good condition and should be removed.

27.

NATIONAL BRAKE owed Plaintiffs a duty to use reasonable care in the inspection and service of vehicles and in providing safety instructions and warnings

relative to the condition of those vehicles. NATIONAL BRAKE violated this duty by inspecting and/or servicing the vehicle in question which was unsafe in the condition which it was in at the time that it was serviced for MS. MANLEY. These negligent acts include, but are not limited to the following acts or omissions:

27.1: Negligently inspecting the vehicle and specifically, its tires;

27.2: Negligently failing to determine and instruct MS. MANLEY that the tires on the van were unfit for use;

27.3: Negligently failing to educate or train it's sales and service staff on appropriate tire fitment, the signs that a tire was unfit for use, how to determine that a tire was unfit for use;

27.4: Negligently failing to implement and enforce policies and procedures with regard to training and supervision of its sales and service staff, particularly with regard to the warnings and instructions which they were providing customers relative to the condition of vehicles which were being serviced.

These acts of negligence were a proximate and producing cause of the accident, injuries, and damages suffered by the Plaintiffs. The dangers referenced earlier were reasonably foreseeable or scientifically discoverable for NATIONAL BRAKE.

## COUNT 8
## WRONGFUL DEATH

28.

In accordance with the Georgia Wrongful Death Act, the Plaintiffs, as the surviving children of unmarried MINDY MANLEY, bring this action for the wrongful death of MINDY MANLEY, including the full value of the life of the decedent, both economic and non-economic.

## DAMAGES

29.

As a proximate result of the conduct of Defendants FORD, COOPER TIRE, and NATIONAL BRAKE, as fully set forth herein, the Plaintiff has suffered injuries and damages. The Plaintiffs seek monetary damages from FORD and COOPER TIRE to compensate for the following elements of damage:

A. <u>Mindy Manley, Deceased</u>:

29.01   On behalf of the Estate, Pain and suffering;

29.02   On behalf of the surviving children, the Full value of the life of the decedent as determined by the enlightened conscience of a fair and impartial jury;

29.03   On behalf of the Estate, Funeral and medical expenses;

B. <u>Deborah Manley, Brian Manley, Chandler Dobson-Manley, and Kenny Dobson</u>:

29.05   Pain and suffering in the past and in the future;

29.05   Physical disfigurement in the past and in the future;

29.06   Mental anguish in the past and in the future;

29.07   Medical and rehabilitative expenses in the past and in the future;

29.08   Loss of earnings and earning capacity in the past and in the future;

C. <u>All Plaintiffs</u>:

29.09   Punitive damages as allowed by law, (recognizing and excepting that the claim for punitive damages is not a part of the wrongful death damages)

The Plaintiff reserves the right to prove the amount of damages at trial.

## PUNITIVE DAMAGES

30.

In addition to compensatory damages, the Plaintiffs (except in the wrongful death case on behalf of the survivors) are seeking punitive damages from Defendants

FORD and COOPER TIRE because the conduct of the defendants constitutes reckless, grossly negligent, willful, wanton, malicious behavior that needs to be punished for and deterred from similar future misconduct. The acts set forth in this complaint were steps taken by the Defendants with knowledge of the associated risks to consumers. This company took the steps set forth herein in conscious disregard for the potential consequences and under circumstances for which a jury could determine that the Defendants willfully, wantonly, recklessly, maliciously, and consciously indifferent to the consequences endangered human life. FORD and COOPER TIRE have been sued for precisely the same conduct many times. FORD and COOPER TIRE are and were fully aware of their design decisions, and FORD and COOPER TIRE deserve to be punished in a civil forum for their malicious misconduct. The amount of punitive damages to be awarded is within the discretion of the jury.

31.

Plaintiff reserves the right to amend his complaint by adding additional counts as discovery continues.

32.

Plaintiff requests a trial by jury on all issues.

WHEREFORE, PLAINTIFFs pray for judgment against FORD, COOPER TIRE, and NATIONAL BRAKE, that all costs of this action be cast against the defendants, that Plaintiffs have a jury trial as to all matters properly considered by a jury and for any and all other just relief this court may deem appropriate.

DATED: September __19__, 2013.

Respectfully submitted:

By: _/s/ Larry Keith Evans_

Larry Keith Evans, Esq.

Attorney For Plaintiff

Ga. Bar #252450

EVANS & EVANS

113 West Taylor Street

Griffin, GA 30223

Ph: (770) 228-5530 Fax: 770-227-4817

E-mail: lkevans@bellsouth.net


By: _/s/ Tab Turner_

Tab Turner, Esq.

Attorney for Plaintiff

AR Bar #85158


4705 Sommers Ave.

S-100

North Little Rock, AR 72116

T: 501-791-2277 F: 501-791-1251

www.tturner.com